UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOHN DOE,<br><br>        Plaintiff,<br><br>v.<br><br>ONE SOURCE TECHNOLOGY, LLC d/b/a ASURINT,<br><br>        Defendant. | Case No. 3:23-cv-01148-VAB<br><br>**PLAINTIFF'S MOTION FOR LEAVE TO PROCEED UNDER PSEUDONYM OR, IN THE ALTERNATIVE, MOTION FOR LIMITED PROTECTIVE ORDER**<br><br>**Dated: August 30, 2023** |

Plaintiff, John Doe, moves for leave to proceed in pseudonym or, in the alternative, for entry of a limited protective order pursuant to Fed. R. Civ. P. 26(c)(1), and states the following in support:

**I. RELEVANT FACTS**

At a date prior to the relevant time period, Plaintiff applied for and received an Absolute Pardon of certain criminal records pursuant to CONN. GEN. STAT. § 54-142a(d)(2) (Formerly § 54-90) (2022). Under Connecticut state law, an Absolute Pardon – also known as an "expungement", an "erasure", or a "full pardon" - operates to "automatically erase[]" criminal records from the public record (*Doe v. Manson*, 183 Conn. 183, 185 (Conn. 1981)), resulting in the "complete erasure of [the applicant's] official Connecticut adult criminal record…" (*Pardon FAQs,* ST. OF CONN. BD. OF PARDONS & PAROLES, https://portal.ct.gov/BOPP/Pardon-Division/Pardon/Pardon-FAQs (last accessed Aug. 23, 2023)). Upon receiving the Absolute Pardon, Plaintiff's prior criminal records were automatically removed from the public record by operation of "the pardoning power […] vested in the legislature…" *McLaughlin v. Bronson*, 206 Conn. 267, 271, 537 A.2d 1004 (1988).

In or around June 2023, Plaintiff applied for full-time employment as a truck driver with non-party PODS Enterprises ("PODS"). Upon applying to PODS, Plaintiff successfully completed an interview, and PODS extended a job offer to Plaintiff for the position to which he applied. The job offer was conditioned upon Plaintiff passing a background check ("employment report"). PODS contracts with Defendant to conduct background checks, including criminal background checks, on prospective employees. On or about June 9, 2023, PODS ordered a criminal background check on Plaintiff from Defendant. On or about July 5, 2023, Defendant completed its employment report about Plaintiff and sold the same to PODS. Within that employment report, Defendant published inaccurate information about Plaintiff, including the expunged/erased criminal convictions from Connecticut. How Defendant obtained these records, when the same were automatically erased from public view by operation of Connecticut state law, is unknown. However, an up-to-date review of the publicly available court records would not have included the expunged/erased criminal records included in Plaintiff's background report.

Plaintiff's employment at PODS was jeopardized by the inaccurate reporting, and Plaintiff was forced to appear before human resources and to explain the records, which should not have been communicated to PODS in the first place. This is precisely the type of harm Connecticut's Absolute Pardon erasure process is intended to prevent.

This well-deserved lawsuit followed, asserting a claim against Defendant under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C § 1681e(b).

## II. APPLICABLE LAW

As a general matter, Federal Rule of Civil Procedure 10(a) requires that "all the parties" be named in the title of the complaint. "This requirement, though seemingly pedestrian, serves the vital purpose of facilitating public scrutiny of judicial proceedings and therefore cannot be set aside lightly." *Sealed Plaintiff v. Sealed Defendant #1*, 537 F.3d 185, 188-89 (2d Cir. 2008).

**However**, in certain limited circumstances, a court may deviate from this principle and permit a party to proceed under a pseudonym. "[W]hen determining whether a plaintiff may be allowed to maintain an action under a pseudonym, the plaintiff's interest in anonymity must be balanced against both the public interest in disclosure and any prejudice to the defendant." *Id.* at 189.

> Factors a court may consider include, but are not limited to, the following:
>
> (1) whether the litigation involves matters that are highly sensitive and of a personal nature; (2) whether identification poses a risk of retaliatory physical or mental harm to the party seeking to proceed anonymously or even more critically, to innocent non-parties; (3) whether identification presents other harms and the likely severity of those harms, including whether the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity; (4) whether the plaintiff is particularly vulnerable to the possible harms of disclosure, particularly in light of his [or her] age; (5) whether the suit is challenging the actions of the government or that of private parties; (6) whether the defendant is prejudiced by allowing the plaintiff to press his [or her] claims anonymously, whether the nature of that prejudice (if any) differs at any particular stage of the litigation, and whether any prejudice can be mitigated by the district court; (7) whether the plaintiff's identity has thus far been kept confidential; (8) whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose his [or her] identity; (9) whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities; and (10) whether there are any alternative mechanisms for protecting the confidentiality of the plaintiff.

*Id.* at 190 (alterations, citations, and internal quotation marks omitted). "[A] district court is not required to list each of the factors or use any particular formulation as long as . . . the court balance[s] the interests at stake in reaching its conclusion." *Id.* at 191 n.4.

**III.   ARGUMENT**

    **A. THE SECOND CIRCUIT'S BALANCING TEST WEIGHS IN FAVOR OF ALLOWING PLAINTIFF TO PROCEED UNDER A PSEUDONYM.**

Under the test articulated by the Second Circuit, factors 1, 3, 6, 7, 8, and 9 all strongly weigh in favor of permitting pseudonymous litigation. Plaintiff's pardoned/expunged/erased criminal records constitute highly sensitive information, the public dissemination of which would undoubtedly cause substantial harm comprised of the very injury Plaintiff seeks to remedy with

this litigation. Further, pseudonymous litigation will cause no prejudice to Defendant, who will be fully apprised of Plaintiff's identity – which has thus far been kept confidential from the public – through non-public discovery. Finally, the public has already spoken, both through Congress in enacting the FCRA and through the Connecticut legislature in enacting Conn. Gen. Stat. § 54-142a, clearly stating that it does not have a strong interest in the publication of Plaintiff's identity.

For these reasons, discussed in full below, Plaintiff respectfully requests leave to proceed under pseudonym.

### 1. Under Federal And Connecticut State Law, Plaintiff's Criminal Records Are Highly Sensitive.

Federal law entitles Plaintiff to *confidentiality, accuracy, relevancy, and proper utilization* of his criminal records. *See* 15 U.S.C. § 1681(b). The FCRA protects consumers from exposure of private or inaccurate facts. The FCRA explicitly acknowledges the importance of confidentiality in its description of the purpose of the Act:

> It is the purpose of this subchapter to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the **confidentiality, accuracy, relevancy, and proper utilization of such information** in accordance with the requirements of this subchapter.

§1681(b) (emphasis supplied).

The FCRA itself provides that "[t]here is a need to ensure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." §1681(a)(4). Further, section 1681b lists the permissible purposes for which consumer reports —which include Plaintiff's criminal records— may be disclosed. Section 1681b expressly states that there are no other permitted purposes. Section 1681c(a)(2) further requires that records of arrest not be reported when they are seven years older than the date of the report.

Connecticut law also provides that individuals with expunged records are not to be subject

4

to the embarrassment and stigma inherent in the association with a criminal record. Indeed, where an erasure is exists, the individual is legally "deemed to have never been arrested within the meaning of the general statutes with respect to the proceedings so erased" and is given the statutory right to "so swear under oath." Conn. Gen. Stat. § 54-142a(e).

Both Congress and the Connecticut legislature have clearly spoken: A citizen's criminal record is to be treated with the utmost care. Dissemination of the same is handled in a confidential and accurate manner, and should that record be erased, it is not to be used by the public to stigmatize or hinder the citizen's future prospects. Such information is therefore definitionally "highly sensitive and of a personal nature…" *Sealed Plaintiff*, 537 F.3d at 190.

> **2. Public Dissemination Of Plaintiff's Erased Criminal Records Would Undoubtedly Cause The Very Substantial Harm Plaintiff Seeks To Remedy Under The FCRA.**

As stated above, Connecticut law has already operated to expunge Plaintiff's criminal records. If forced to identify himself, Plaintiff will be effectively creating a public record linking his identity to Defendant's reporting of his criminal records. Thus, the general public would be able to connect Plaintiff's identity to his expunged criminal records, which could not have been legally reported under the FCRA or Connecticut law.

Frankly stated, denial of Plaintiff's motion would require him to choose between the enforcement of his federal rights and the enjoyment of his state rights. As another district court has correctly noted, "in today's internet age, the docket filings [for a case] are likely to remain pervasively available." *A.D. v. Wyndham Hotels & Resorts*, No. 4:19cv120, 2020 U.S. Dist. LEXIS 163851, at *5 (E.D. Va. Mar. 20, 2020) (quotation omitted). That is, Plaintiff's litigating to hold Defendant accountable for falsely associating him with a criminal record will have the effect of massively distributing the very same falsehood. Unless permitted to proceed in pseudonym, Plaintiff's action would be the equivalent of attaching a bullhorn to Defendant's falsity that was

heretofore in limited, though injurious, circulation.

Stated another way, without leave to proceed under pseudonym, Plaintiff will be forced to choose between (1) maintaining the clear judicial record wherein no publicly available information links him to a criminal record, or (2) prosecuting the statutory protections provided him by the FCRA. This case represents the quintessential situation where "the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity." *Sealed Plaintiff*, 537 F.3d at 190.

### 3. Defendant Will Suffer No Prejudice If Plaintiff Is Permitted To Proceed Under A Pseudonym.

Plaintiff is not requesting leave to keep his identity hidden from Defendant, only from the general public. Proceeding under a pseudonym will allow Plaintiff to disclose his identity to Defendant while avoiding the creation of a public record linking his identity to the criminal records erased pursuant to Connecticut state law. Therefore, Defendant will suffer no prejudice whatsoever if Plaintiff is permitted to proceed pseudonymously. Defendant will be able to internally research Plaintiff's claims, fully participate in discovery, and therefore adequately defend itself against Plaintiff's allegations brought under the FCRA. Because Defendant will not be "prejudiced by allowing the plaintiff to press his […] claims anonymously", this factor weighs in favor of granting Plaintiff's motion. *Sealed Plaintiff*, 537 F.3d at 190.

### 4. Plaintiff's Identity Has Thus Far Been Kept Confidential.

At this point in the litigation, the only parties privy to Plaintiff's identity are (1) Plaintiff and his counsel, (2) Defendant, and (3) PODS. As noted above, Defendant's false reporting has heretofore been in limited, though injurious, circulation. Because Plaintiff's "identity has thus far been kept confidential", this factor weighs in favor of granting Plaintiff's motion. *Sealed Plaintiff*, 537 F.3d at 190.

> 5. **The Public's Interest In Plaintiff's FCRA Litigation Will Not Be Furthered By Denying Plaintiff's Motion; To The Contrary, Public Interest Supports The Granting Of Plaintiff's Motion.**

The public has a strong interest in maintaining confidentiality of litigants in cases such as this. Indeed, as discussed above, the public spoke clearly on this issue when it enacted the Connecticut process for erasing pardoned criminal records and when it enacted the FCRA and named the four overarching goals of "**confidentiality**, accuracy, relevancy, and **proper utilization** of [consumer credit] information." 15 U.S.C. § 1681(b) (emphasis added). Here, Defendant breached its duties under the FCRA, and in so doing, simultaneously caused the very result the Connecticut pardon statute was enacted to prevent and failed to uphold all four expressly stated FCRA goals. "The public's interest in [Plaintiff's] litigation" will be hindered "by requiring the plaintiff to disclose his […] identity." *Sealed Plaintiff*, 537 F.3d at 190. This factor weighs in favor of granting Plaintiff's motion.

> 6. **There Is An Atypically Weak Public Interest In Knowing Plaintiff's Identity, Expressed By The Public's Enactment Of The FCRA And Connecticut Pardon Statute.**

The crux of this factor is whether "there is an atypically weak public interest in knowing" Plaintiff's identity. As noted in the previous section, the public has already spoken on this issue, passing (1) the Connecticut pardon statute which involves an erasure of criminal records pardoned thereunder, and (2) the FCRA with a stated goal of protecting the confidentiality and proper use of consumer credit information. Exposing Plaintiff to the enhanced damages that will result from revealing his identity to the public would actively work against both statutes' purposes and thus work against the public's interest. There is therefore "an atypically weak public interest in knowing" Plaintiff's identity. *Sealed Plaintiff*, 537 F.3d at 190. This factor weighs in favor of granting Plaintiff's motion.

B.  **IN THE ALTERNATIVE, PLAINTIFF MOVES THE COURT FOR ENTRY OF**

### A LIMITED PROTECTIVE ORDER.

Fed. R. Civ. P. 26(c) provides, in relevant part, that "for good cause shown, the court in which the action is pending . . . may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Pursuant to this authority, Plaintiff seeks an order protecting his privacy and confidentiality throughout the proceedings and to avoid public disclosure of the details alleged in his complaint so as to avoid making his statutorily erased record public. Plaintiff incorporates all of the arguments set forth above in support of his motion to proceed pseudonymously herein as supportive of a finding of "good cause" for the entry of a protective order.

Thus, in the event that Plaintiff's true identity must be revealed in these proceedings, Plaintiff requests that the Court enter a limited protective order (the exact language of which can be threshed out with the input of all parties) which would require either (1) any reference to his true identity or identifying information, or (2) descriptions and references to the underlying facts of the case, inclusive of the erased criminal records, to be filed under seal. *See e.g. Doe v. Rentgrow, Inc.*, 2023 U.S. Dist. LEXIS 114786, *5 ("The plaintiff will not be allowed to proceed anonymously but, pursuant to a protective order, will be allowed to redact sensitive information in pleadings filed in open court.").

### IV.   CONCLUSION

Because both federal and Connecticut law recognize the confidentiality of Plaintiff's criminal records, and because forcing Plaintiff to reveal his identity would create a situation where Plaintiff would be required to waive his protections under Connecticut law to seek enforcement of his FCRA rights, the Court should grant leave to Plaintiff to proceed under a pseudonym. In the alternative, the Court should permit the entry of a limited protective order designed to prevent the re-dissemination of confidential information – and the harm inherent in such dissemination – via

8

public filings in this case.

Dated: August 30, 2023

>*/s/ McKenzie Czabaj*
>McKenzie Czabaj, CT31489
>**CONSUMER ATTORNEYS PLC**
>8245 N. 85th Way
>Scottsdale, AZ 85258
>T: 480-626-2376
>F: 718-715-1750
>E: mczabaj@consumerattorneys.com
>
>*Attorney for Plaintiff*
>*John Doe*

## CERTIFICATE OF SERVICE

  I hereby certify that on August 30, 2023, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which will send notice of such filing to all attorneys of record in this matter. Since none of the attorneys of record are non-ECF participants, hard copies of the foregoing have not been provided via personal delivery or by postal mail.

                **CONSUMER ATTORNEYS PLC**

                By: */s/ Alexia Bedolla*
                   Alexia Bedolla